IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-17-D

| | |
|---|---|
| MARY ELIZABETH NELSON, )<br>)<br>Plaintiff/Claimant, )<br>)<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-14, -19] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Mary Elizabeth Nelson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded to the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on April 9, 2012, alleging disability beginning March 24, 2012. (R. 15, 174-75). The claim was denied initially and upon reconsideration. (R. 15, 72-100). On informal remand, it was determined that the medium residual functional capacity ("RFC") given at the reconsideration level was not restrictive enough

in light of Claimant's limitations and that the light RFC given at the initial review level was more appropriate, however, the claim was still denied. (R. 101-04). A hearing before the ALJ was held on April 1, 2014, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 15, 33-71). On June 9, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 12-32). On November 30, 2015, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial

2

evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 17). Next, the ALJ determined Claimant had the severe impairments of osteoarthritis of the bilateral knees, including status-post arthroscopy x3 on the left; hypertension; obesity; major depressive disorder; and generalized anxiety disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace, with no episodes of decompensation of an extended duration. (R. 18-19).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant has the ability to perform light work[1] with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk or sit at least six hours out of an eight-hour workday with a "sit/stand" option in which she can switch positions every 30 minutes; occasionally push and pull with the bilateral lower extremities; frequently stoop; occasionally balance, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, and scaffolds; avoid concentrated exposure to

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

hazards such as dangerous moving machinery and heights; perform no more than simple, repetitive, routine tasks; maintain attention or concentration for two-hour blocks of time; occasionally interact with supervisors, co-workers, and the general public; and work in a low stress environment, which means no fast-paced production work and performing only simple work-related decisions with few or no changes in the work setting. (R. 20-26). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely credible. (R. 21). At step four, the ALJ concluded Claimant was unable to perform any past relevant work. (R. 26). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 27-28).

Claimant contends the ALJ erred by (1) failing to appropriately weigh the opinions of the treating physicians, and (2) presenting a legally insufficient hypothetical to the VE. Pl.'s Mem. [DE-15] at 12-24.

## V. DISCUSSION

### A. The RFC Analysis

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d

56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence").

If the ALJ determines that a treating physician's opinion should not be considered

6

controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted).

### 1. Dr. Ojebuoboh's Opinion

Claimant contends that the ALJ erred in evaluating the opinion of Dr. Ojebuoboh, Claimant's treating physician. Pl.'s Mem. [DE-15] at 12-20. Specifically, Claimant argues that because Dr. Ojebuoboh had an established treatment relationship with Claimant, was an examining physician, and his opinion was supported by objective evidence in the record, it should have been given controlling weight. *Id.* at 16-17. Claimant also argues that the ALJ misstated the evidence. *Id.* at 17-19. The Commissioner contends that the ALJ gave appropriate weight to Dr. Ojebuoboh's opinion. Def.'s Mem. [DE-20] at 5-10.

7

Case 7:16-cv-00017-D   Document 22   Filed 02/06/17   Page 7 of 14

Dr. Ojebuoboh, who had been treating Claimant for more than two years for arthritis, back pain, knee pain, hypertension, and other sporadic common complaints, completed a one-page form statement regarding Claimant's physical capacity on January 1, 2013. (R. 366). Dr. Ojebuoboh indicated that due to Claimant's degenerative arthritis, lumbar radiculopathy, and hypertension, Claimant should avoid all lifting and carrying; could sit for ten minutes and stand or walk for five minutes in an eight-hour work day; required a cane to ambulate even minimally; could never perform postural movements such as pushing and pulling, climbing and balancing, gross and fine manipulation, or bending and stooping; and would miss more than four days of work a month. *Id.* Dr. Ojebuoboh also saw Claimant for a follow-up office visit that same day. (R. 398-99). Claimant complained of back pain and arthritis, requested medication refills, it was noted that she had no medical insurance, and she was instructed to follow up again in six months. *Id.*

The ALJ summarized Claimant's medical treatment (R. 21-23) and then weighed Dr. Ojebuoboh's opinion, affording it "little weight" because it was inconsistent with the medical evidence as a whole and the objective evidence showing "mild to no-more-than-moderate findings." (R. 23). The ALJ's discussion of Claimant's treatment notes demonstrates that many of the restrictions offered by Dr. Ojebuoboh are inconsistent with his treatment notes and other record evidence. For example, there is nothing apparent in the treatment notes to support that Claimant could never perform gross or fine manipulation or that she should avoid all lifting and carrying. In fact, in October 2012, Claimant reported to Dr. Moxie, a consultative examiner, that she could handle or manipulate objects and could lift and carry up to 10–15 pounds. (R. 362); *see Dunn v. Colvin*, 607 F. App'x 264, 271 (4th Cir. June 1, 2015) (unpublished) (concluding the ALJ did not err in affording limited weight to a treating source's opinion where "there is more than a 'scintilla

8

of evidence' in the record supporting the ALJ's conclusion that [the physician's] opinion is incongruent with both his own treatment notes and some of the other medical evidence in the record."). Accordingly, the ALJ did not err in giving little weight to Dr. Ojebuoboh's opinion, which offered extreme limitations unsupported by the record.

Notwithstanding, Claimant raises an issue in the context of discussing Dr. Ojebuoboh's opinion that calls into question the ALJ's RFC assessment that Claimant can perform light work with limitations. Claimant notes that in September 2013, Dr. Scully stated her left knee osteoarthritis was so severe that it "would only be benefitted with a total knee arthroplasty." (R. 402). The ALJ in discussing Dr. Scully's treatment note omitted this material information, which would tend to support Claimant's position that she lacks the ability to perform the walking or standing required for light work. Furthermore, the ALJ understated Dr. Scully's examination finding regarding Claimant's gait as "antalgic" rather than "markedly antalgic." (R. 22, 402). These are significant and material issues where Claimant's need for a total left knee arthroplasty also conflicts with the ALJ's statement that the objective evidence showed only mild to no-more-than-moderate findings. (R. 23). Claimant consistently complained of pain in her knees, imaging showed medial compartment osteoarthritis of the left knee and a small tear in her medial meniscus of the right knee, as well as joint effusion, and Dr. Moxie on consultative examination noted Claimant had limited range of motion, scarring, spasm, crepitus, deformity, and flexion of 110 degrees and extension of zero degrees in her knees bilaterally. (R. 21-22, 276-77, 279-80, 304-05, 363, 396-403). Thus, there is probative evidence in the record that is supportive of her claim. Although the ALJ need not discuss every piece of evidence, *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014), the ALJ may not ignore material evidence that conflicts with his decision, *Drotar v. Colvin*, No. 7:13-CV-265-FL, 2015 WL

965626, at *3 (E.D.N.C. Mar. 4, 2015) (unpublished) (citing *Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (citation omitted)). The ALJ's failure to address Dr. Scully's statement that Claimant required a total left knee arthroscopy is a material omission that could impact the RFC, leaving the court unable to conduct the requisite substantial evidence review. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Furthermore, it is not the court's role to weigh such evidence in the first instance. *Id.* at 296. Accordingly, it is recommended that the matter be remanded for the ALJ to fully address the evidence regarding Claimant's knee impairment and the effect on the RFC.

### 2.     **Dr. Mikhail's Opinion**

Claimant contends that the ALJ erred in giving "little weight" to the opinion of Claimant's treating psychiatrist Dr. Mikhail. Pl.'s Mem. [DE-15] at 19-20. Specifically, Claimant argues the ALJ's criticism that the opinion was not expressed in "vocationally relevant terms" is unfounded and that the opinion is supported by the treatment notes. *Id.* The Commissioner contends that the ALJ's assessment is supported by the record. Def.'s Mem. [DE-20] at 8-10.

Claimant received mental health treatment, beginning in 2010 and continuing into 2014, at Coastal Carolina Neuropsychiatry Center from Dr. Akintayo, Dr. Mikhail, and Jessica Hardin, PA-C. (R. 309-60, 404-19). On March 10, 2014, Ms. Hardin completed a form medical assessment of mental ability to do work-related activities, which was co-signed by Dr. Mikhail. (R. 427-30). Ms. Hardin indicated Claimant's ability to follow work rules and interact with a supervisor was good; her ability to relate to co-workers, use judgment, function independently, and to understand, remember, and carry out simple, detailed or complex instructions was fair; and her ability to deal with the public or work stressors and to maintain attention and concentration was poor. (R. 427-30). Ms. Hardin left blank the spaces provided to describe any limitations or medical and clinical findings

10

in support of the assessment. *Id.*

The ALJ's determination that the opinion was inconsistent with the treatment notes is supported by the record. As Claimant acknowledges, she had "several essentially normal examinations and her mood was repeatedly euthymic" during the period from 2010 to 2014. Pl.'s Mem. [DE-15] at 20. While Claimant points out that these periods were interrupted by exacerbations in her mood, she points to no evidence that the ALJ failed to consider. *Id.* The ALJ noted that at times Claimant reported being very depressed, experienced crying episodes, and her depressive symptoms were worsening. (R. 23). However, the ALJ also found that Claimant received conservative treatment, her depressive symptoms were often situational, and her medications were generally effective. *Id.* Where the ALJ has considered the material evidence and sufficiently explained the decision, it is not the court's role to re-weigh the evidence and substitute its own conclusions for those of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). While some evidence in the record might support the opinion, there is more than a "scintilla of evidence" supporting the ALJ's decision to afford it little weight. *Dunn*, 607 F. App'x at 271. Moreover, a check-the-box form, without more, may be discounted. *See Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) (unpublished) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings.") (citations omitted). Accordingly, the ALJ did not err in evaluating this opinion.

## B. Hypothetical to the VE

Claimant contends the ALJ failed to incorporate certain limitations supported by the record into the hypothetical to the VE and that the ALJ's hypothetical supposed that a claimant needing a

11

total knee replacement can spend up to one-third of the day working on her knees. Pl.'s Mem. [DE-15] at 20-23. The Commissioner argues that the ALJ's hypothetical was legally sufficient. Def.'s Mem. [DE-20] at 11-12.

The RFC is utilized by the ALJ at steps four and five to determine whether the claimant can perform past work and, if not, whether there is other work the claimant can perform. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing S.S.R. 96-8p, 1996 WL 374184, at *3-4). Thus, a proper RFC is critical, and "[w]ithout a careful consideration of an individual's functional capacities to support [a residual functional capacity] assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* (quoting S.S.R. 96-8p, 1996 WL 374184, at *4).

The ALJ here utilized a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (unpublished) (holding the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record). In other words, the hypothetical to the VE must be based on an accurate RFC. *See Massey v. Colvin*, No. 113CV965, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015) (unpublished) ("VE testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an

12

accurate RFC.") (citing *Walker*, 889 F.2d at 50-51).

Because the ALJ failed to consider material evidence favorable to the Claimant in formulating the RFC, it is necessary for the ALJ to also reconsider the hypothetical to the VE in light of this evidence. Accordingly, this issue raised by Claimant is not addressed here but should be reconsidered on remand in connection with the RFC assessment.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-14] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-19] be DENIED, and the matter be remanded to the Commissioner.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 20, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding**

13

**district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

SUBMITTED, this the 6th day of February 2017.

Robert B. Jones, Jr.
United States Magistrate Judge